## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-24694-BLOOM/Otazo-Reyes

IBALDO ARENCIBIA,

 Plaintiff,

v.

AGA SERVICE COMPANY, *et al.*,

 Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** is before the Court upon Defendants AGA Services Company ("Allianz")
and Jefferson Insurance Company's ("Jefferson") (collectively, "Defendants") Motion to Dismiss
Amended Class Action Complaint, ECF No. [107] ("Motion"). The Court has carefully reviewed
the Motion, all opposing and supporting submissions, the record in this case, and the applicable
law. In addition, the Court held a hearing on the Motion and has considered the arguments made
by the parties on March 3, 2021, and is otherwise fully advised. For the reasons set forth below,
the Motion is granted.

### I. FACTUAL BACKGROUND

On October 17, 2019, Plaintiff Ibaldo Arencibia ("Plaintiff") initiated this class action
lawsuit against Defendants and American Airlines, arising from his online purchase of a travel
insurance policy. *See generally* ECF No. [1]. According to the Amended Complaint, on August
17, 2019, Plaintiff purchased a roundtrip airline ticket on American Airlines' website to travel
from Miami, Florida to Bogota, Columbia. ECF No. [84] ¶ 18. During the online booking process
Plaintiff was presented with an option to purchase travel insurance from Allianz. *Id.* "[Plaintiff]
looked at it, and because it seemed like a good option to protect his trip, he decided to buy it." *Id.*

Plaintiff alleges that he reasonably believed "that if he chose the insurance option, he would not be responsible for any cancellation fees and would be reimbursed the price of his flight[.]" *Id.* ¶ 19. In other words, Plaintiff believed that "[a]t most, he would be responsible for the $36.83 he would pay to Allianz for the policy and its coverage." *Id.* Following his purchase, on August 17, 2019, Allianz sent Plaintiff an email "[t]hank[ing] [him] for protecting [his] upcoming travel plans" and attaching a copy of the 36-page Policy. *Id.* ¶ 43; *see also id.* at 31-65 ("Policy"), 66-68 ("Allianz Email").

Thereafter, Plaintiff was offered a job opportunity to go on a seven-day multi-state tour as a technician on days overlapping his planned Bogota trip. *Id.* ¶ 20. On September 1, 2019, Plaintiff, "[t]hinking he was 'insured,'" contacted Allianz, and was informed by an Allianz agent that his work conflict was not covered under the Policy. *Id.* ¶ 21. The Allianz agent further instructed Plaintiff to call American Airlines to cancel the trip, and to submit an online claim to Allianz to "see what could be done." *Id.* The following day, Plaintiff cancelled his flight to Bogota and completed the online claim submission. *Id.* ¶ 22; *see also id.* at 27-28 ("Claim Confirmation"). On September 9, 2019, Plaintiff received a letter from Allianz, informing him that it would be "unable to provide benefits under the coverage [he] purchased because . . . [the Policy] is a named perils travel insurance program, which means it covers only the specific situations, events and losses included in [the Policy], and only under the conditions [Allianz] describe[s]." *Id.* ¶ 23; *see also id.* at 29 ("Denial Letter").

Plaintiff alleges that the denial letter was in "stark contrast" with the representations made by Allianz before his purchase. *Id.* ¶ 24. Specifically, Plaintiff alleges that the Allianz travel insurance offer led him to believe that he was purchasing "broad, no fault insurance protection and coverage" based upon, among other things: (1) the broad offer language stating "Yes, protect my trip" and representation that the Policy "includes trip cancellation, trip interruption, . . . and

more[;]" (2) the disclosure that "by declining coverage [he is] responsible for all cancellation fees and expenses[;]" (3) the requirement to accept or decline travel insurance before purchasing a flight; and (4) the non-disclosure in the offer that the Policy covered only named perils. *Id.* ¶¶ 24-28. Based on these representations, a reasonable consumer "would get the net impression that Allianz' insurance provides broad, no-fault insurance protection and coverage, and that should one choose to purchase this insurance, one would not be 'responsible for all cancellation fees and expenses.'" *Id.* ¶ 26.

Plaintiff alleges that Jefferson is complicit in Allianz's scheme to mislead consumers into purchasing this "empty 'insurance' coverage" *Id.* ¶ 83. Specifically, Plaintiff maintains as the underwriter of the Policy, Jefferson "is well aware of its contents and knows that, in essence and substance, the [Policy] is narrowly limited to medical emergencies or catastrophic events, in contradiction to the offer of insurance its partners, Allianz and [American Airlines], make to consumers at the time of purchase." *Id.* ¶ 64. Plaintiff also alleges that American Airlines is complicit in the scheme by permitting Allianz to use "its massive online platform" so it can "make convenient, strategically located offer (on the flight payment screen) that misleads consumers." *Id.* ¶ 48. Plaintiff further contends that both Jefferson and American Airlines received kickbacks from Allianz. *Id.* ¶¶ 31, 63.

The Amended Complaint asserts six claims for relief on behalf of a proposed nationwide class, Florida subclass, and Texas subclass: (I) Declaratory Action against Defendants and American Airlines; (II) Unjust Enrichment against American Airlines; (III) Unjust Enrichment against Defendants; (IV) Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, against Defendants; (V) Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, against Defendants and American Airlines; and (VI) Deceptive Trade Practices against American Airlines.

## II.      PROCEDURAL BACKGROUND

On October 17, 2019, Plaintiff filed the instant action against Defendants and American Airlines in the Southern District of Florida, which was originally assigned to Judge Marcia G. Cooke. ECF Nos. [1] and [2]. On December 13, 2019, Defendants and American Airlines separately moved to dismiss the Complaint. ECF Nos. [26] and [29]. Thereafter, on December 27, 2019, American Airlines moved to sever and transfer all claims against it to the Northern District of Texas based upon a forum selection clause to which Plaintiff agreed when he joined American Airlines' AAdvantage loyalty program. ECF No. [33]. On August 5, 2020, Judge Cooke transferred the action to the Northern District of Texas, where the case was assigned to Judge Reed O'Connor. ECF Nos. [61] and [63]. Judge Cooke did not rule on the then-pending motions to dismiss. ECF No. [61]; *see also* ECF Nos. [26], [29], [31], [32], [41], and [45].

On October 16, 2020, Plaintiff filed the operative Amended Complaint, ECF No. [84]. On October 23, 2020, Defendants and American Airlines filed their respective motions to dismiss in the Northern District of Texas, to which the parties filed supporting and opposing submissions. ECF Nos. [86], [87], [89], [90], [95], and [96]. On November 13, 2020, Judge O'Connor granted American Airlines' motion to dismiss with prejudice, dismissed American Airlines from this action, and transferred the remaining claims against Defendants back to this District. ECF No. [97] ("Dismissal Order"). On November 16, 2020, the case was assigned to this Court. ECF No. [99]. On December 14, 2021, Defendants filed the instant Motion, seeking to dismiss all remaining claims in the Amended Complaint with prejudice. ECF No. [107]. Plaintiff filed a response, ECF No. [115] ("Response"), Defendants filed a reply, ECF No. [118] ("Reply"), and Plaintiff filed further briefing with leave of Court, ECF No. [119-1] ("Sur-Reply"). Thereafter, on March 3, 2021, the Court heard oral argument on the Motion. ECF No. [123].

The Motion is now ripe for consideration.

### III.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and the attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A]

document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (*citing Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). It is through these lenses that the Court addresses the instant Motion.

## IV.   DISCUSSION

Defendants seek to dismiss Counts I, III, IV, and V of the Amended Complaint with prejudice. The Court will address each count in turn. Count I will be addressed last.

### a.   Count III – Unjust Enrichment

In Count III of the Amended Complaint, Plaintiff asserts a claim against Defendants for unjust enrichment, arising from the "payments they received from thousands or millions of consumers" who purchased the purported "wrongfully disclosed" travel insurance Policy. ECF No. [84] ¶ 96. Defendants move to dismiss the unjust enrichment claim, asserting that the claim is barred by: (1) the Florida Unfair Insurance Trade Practices Act, Fla. Stat. § 626.951, *et seq.* ("FUITPA"); and (2) the existence of a contract.

#### 1.   Florida's Unfair Insurance Trade Practices Act ("FUITPA")

Defendants first argue that Plaintiff's unjust enrichment claim is preempted because "there is no implied private right of action in Florida for damages caused by false or deceptive representations concerning insurance coverage" and Plaintiff may not circumvent the Florida Legislature's decision to withhold a private right of action by asserting a claim for unjust enrichment based on such violations. ECF No. [107] at 5, 9-11. In his Response, Plaintiff seemingly concedes "the absence of a statutory cause of action," but nonetheless avers that "an independent common law claim based on fraudulent or deceptive practices may still be asserted." ECF No. [115] at 13.

The Florida Legislature permits an aggrieved "person [to] bring a civil action against an insurer when" the insurer has violated certain enumerated provisions of Florida's Insurance Code. *See* Fla. Stat. § 624.155(1)(a) (listing provisions that afford a plaintiff a private right of action). FUITPA prohibits the "unfair method of competition or an unfair or deceptive act or practice involving the business of insurance." Fla. Stat. § 626.9521(1). Specifically, this includes "[m]isrepresent[ing] the benefits, advantages, conditions, or terms of any insurance policy" and the "advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance, which is untrue, deceptive or misleading." Fla. Stat. § 626.9541(1)(a)-(b). Critically, however, neither § 626.9541(1)(a) nor (b) are among the enumerated provisions of § 624.155(1)(a) that give rise to a civil remedy. *See, e.g.*, *Joseph v. Bernstein*, 612 F. App'x 551, 557 (11th Cir. 2015) ("Section 626.9541(1)(a)(1) is not one of the enumerated sections for which [F]UITPA provides a private cause of action.") (citation omitted)).

The Court agrees with Defendants that the unjust enrichment claim fails because "[P]laintiff[] may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of FUITPA by asserting common law claims based on such violations." *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008) (per curiam). It axiomatic that under Florida law, the "judiciary 'cannot provide a remedy'" for a violation of the Insurance Code "'when the legislature has failed to do so.'" *Lemy v. Direct Gen. Fin. Co.*, 885 F. Supp. 2d 1265, 1272-73 (M.D. Fla. 2012), *aff'd*, 559 F. App'x. 796 (11th Cir. 2014) (quoting *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n*, 94 So. 3d 541, 553 (Fla. 2012)) (dismissing all claims based on alleged violations of the Insurance Code); *see also Buell v. Direct Gen. Ins. Agency, Inc.*, 488 F. Supp. 2d 1215, 1218 (M.D. Fla. 2007), *aff'd*, 267 F. App'x 907 (11th Cir. 2008) (under the doctrine of "'*inclusio unius est exclusio alterious*,' the Florida legislature's express authorization to pursue a private right of action with regard to violations of

specific provisions of the [F]UITPA implies the legislature intended to exclude the pursuit of a private cause of action with regard to a violation of other provisions of the [F]UITPA[.]"). Indeed, the "judicial creation of a substantive right ignores not only the formal separation of powers but also the legislature's superior legislative competence." *Lemy v. Direct Gen. Fin. Co.*, 885 F. Supp. 2d 1265, 1272-73 (M.D. Fla. 2012).

Contrary to Plaintiff's position, the Court is not persuaded that the Florida Supreme Court's decision in *Murthy v. N. Sinha Corp.*, 644 So. 2d 983 (Fla. 1994), permits him to maintain a cause of action for unjust enrichment based on the same underlying misconduct that is otherwise preempted under Florida's Insurance Code. In *Murthy*, homeowners initiated an action against a corporation's qualifying agent, asserting claims for negligent performance of a contract, discharge of a fraudulent lien, and violation of Florida's minimum building codes. *Id.* at 984-85. The Florida Supreme Court determined that Chapter 489 imposes a duty on "a qualifying agent for a corporation . . . to supervise a corporation's construction projects, but [found] that the failure to meet that duty does not give rise to a private cause of action against a corporation's qualifying agent." *Id.* (footnote omitted). Ultimately, the court concluded that the homeowner "may recover from a negligent qualifying agent, but only under a common law theory of negligence or through the administrative remedies available pursuant to chapter 489." *Id.* at 986-87.

Relying upon dicta from *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320 (S.D. Fla. 2015), Plaintiff avers that his "claims based on fraudulent or deceptive practices may still be asserted" because "the mere fact that the defendant might also have violated a statute without any private right of action does not preclude a plaintiff from asserting its existing common law claims." ECF No. [115] at 13 (citing *id.* at 1326); *see also* Fla. Stat. § 626.9631 ("[t]he provisions of this part are cumulative to rights under the general civil and common law"). However, as Defendants correctly note, Plaintiff conveniently overlooks the very next sentence in *Hucke*, which

unequivocally clarifies that "'[n]othing in *Murthy* stands for the proposition that a plaintiff may assert a common law claim' where 'Plaintiff has not alleged any injury that would exist *independent* of the purported statutory violations.'" *Hucke*, 160 F. Supp. 3d at 1326 (citation omitted) (alterations in original) (emphasis in original).

Lastly, Plaintiff argues that "*Buell* is not persuasive authority[]" based on the Eleventh Circuit's decision in *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013), which allowed plaintiff to assert an unjust enrichment claim against health care clinics that wrongfully retained insurance benefits in violation of Fla. Stat. § 400.9935(3). Plaintiff's reliance on *Silver Star* is misplaced, as the Eleventh Circuit addressed the merits of plaintiff's unjust enrichment claim only *after* determining that the "Florida legislature intended to provide a judicial remedy for the violation of the applicable Florida Statute"—*i.e.*, a clinic licensing statute, not FUITPA. *Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV, 2019 WL 9091761, at *4 (S.D. Fla. Oct. 11, 2019); *see also Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1330 (11th Cir. 2016) (in *Silver Star*, "we held that '[u]nder Florida law [an insurer] [is] entitled to seek a judicial remedy to recover the amounts it paid [to a clinic operating in violation of the Clinic Act] and to obtain a declaratory judgment that it is not required to pay [the clinic] the amount of the outstanding bills.'" (alterations in original) (quoting *Silver Star*, 739 F.3d at 584)).

Accordingly, consistent with the legal propositions set forth in *Murthy*, *Buell*, *Silver Star*, and several other decisions within this District,[1] Plaintiff may not assert an unjust enrichment claim

---

[1] *See Donoff*, 2019 WL 9091763, at *8, *reconsideration denied*, 2019 WL 9091761, at *1 (dismissing unjust enrichment claim premised on defendant's alleged receipt of insurance commissions without a license in violation of § 626.112); *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320, 1327 (S.D. Fla. 2015) (dismissing unjust enrichment claim where plaintiff alleged no injury apart from violations of § 560.204, as "this would essentially allow an end-run around the Legislature's decision not to provide a statutory cause of action."); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1229 (S.D. Fla. 2010) ("Plaintiffs cannot use negligence per se to create a private cause of action for alleged violations of § 626.9541(1)(a) 1 and (b) 4 because the legislature has not demonstrated an intent to create a private cause of action under these sections.").

based on the same purported misconduct that would constitute a violation of Fla. Stat. § 626.9541(1)(a), (b). For this reason alone, Plaintiff's unjust enrichment claim warrants dismissal.

### 2. Existence of a contract

Defendants next argue that "there is no viable claim for unjust enrichment" because an express contract for insurance between the parties exists. ECF No. [107] at 11. In his Response, Plaintiff maintains that the contract is "null and void" as a result of Defendants' misleading offer of insurance and "an unenforceable contract cannot preclude [his] claim for unjust enrichment[.]" ECF No. [115] at 14 (citing ECF No. [84] ¶ 81 and *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1344-45 (S.D. Fla. 2016)).

The general rule in Florida is that a plaintiff cannot pursue an equitable remedy, such as a claim for unjust enrichment, "where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984) (per curiam). Therefore, an "unjust enrichment claim is precluded by the existence of an express contract between the parties concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (per curiam); *see also 1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-cv-568-T-27MAP, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011) (Florida courts have held that "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter."). Additionally, under Florida law, "[a] party cannot recover for alleged false misrepresentations that are adequately dealt with or expressly contradicted in a later written contract." *TRG Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So. 3d 782, 784 (Fla. 2d DCA 2009) (citing *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 542-43 (Fla. 5th DCA 2003) (per curiam) and *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1056 (Fla. 4th DCA 1999)). "To hold otherwise is to invite contracting parties to make agreements of the kind in suit and then avoid them by simply taking the stand and swearing that

they relied on some other statement." *Tevini v. Roscioli Yacht Sales, Inc.*, 597 So. 2d 913, 914 (Fla. 4th DCA 1992).

Here, the express terms of the Policy are inconsistent with the alleged misrepresentations upon which Plaintiff purportedly relied. The crux of Plaintiff's argument is that he was deceived into believing "that he was purchasing a broad, no fault insurance" Policy. ECF No. [84] ¶ 45. However, the travel insurance Policy, which was available to Plaintiff prior to his purchase,[2] unequivocally warns consumers that flight cancellation coverage is not unlimited. Specifically, the Policy provides, in pertinent part:

> **WHAT THIS POLICY INCLUDES AND WHOM IT COVERS**
> This travel insurance *policy* covers only the specific situations, events, and losses included in this *policy*, and only under the conditions described. For this reason, it is known as a "named perils" policy. Please review this *policy* carefully. . . .
>
> NOTE:
> - Not every loss is covered, even if it is due to something sudden, unexpected, or out of *your* control. Only those losses meeting the conditions described in this *policy* may be covered.

ECF No. [84] at 35 (formatting in original) (emphasis in original); *id.* at 41-43 (listing "[c]overed reasons"). Therefore, Plaintiff's allegations regarding Defendants' purported misrepresentations are belied by the express terms of the Policy.

Moreover, even if Plaintiff did not read the terms of the Policy, he was on inquiry notice that "[t]erms, conditions and exclusions applied[.]" ECF No. [84] ¶ 19, n.4. Under Florida law, a browsewrap agreement, such as the one here, is enforceable "when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *Bell v. Royal Seas*

---

[2] To the extent Plaintiff argues that the Policy was accessible "only *after* the purchase[,]" this argument is wholly inconsistent with the allegations in Plaintiff's Amended Complaint and submissions. ECF No. [115] at 11 (emphasis in original).

Case No. 20-cv-24694-BLOOM/Otazo-Reyes

*Cruises, Inc.*, No. 19-cv-60752, 2020 WL 5742189, at \*5 (S.D. Fla. May 13, 2020) (citation omitted), *report and recommendation adopted*, No. 19-cv-60752, 2020 WL 5639947, at \*1 (S.D. Fla. Sept. 21, 2020).[3]

According to the Amended Complaint, the travel insurance offer that Plaintiff saw on the date of his purchase was "substantially similar or equal to the" image below,[4] which demonstrates that the hyperlink to the Policy's "[t]erms, conditions and exclusions" was located right below the offer of insurance.



ECF No. [84] ¶ 19, n.4. Thus, Plaintiff was cautioned that clicking "Yes, protect my trip for a total of [amount]" would indicate his acceptance to the 36-page Policy accessible via the hyperlink. *See Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. 2018) (hyperlink to the agreement's terms and conditions "was placed in a manner conspicuous enough to provide reasonable notice to a prudent user, thereby requiring the user to affirmatively acknowledge the

---

[3] Florida courts have recognized two main types of internet contracts: (1) clickwrap agreements: "when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions[;]" and (2) browsewrap agreements: "when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Bell*, 2020 WL 5742189, at \*5 (quotation marks omitted) (quoting *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017)).

[4] For ease of reference, the Court has included the color copy of the travel insurance offer, referenced in Plaintiff's initial Complaint. *See* ECF No. [1] ¶ 19, n.5; *see also* ECF No. [107] at 2, ¶ 2.

[hyperlink] to the Agreement before proceeding."); *see also MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028-29 (Fla. 3d DCA 2018) (per curiam) (hyperlink located at the end of a short message was sufficiently conspicuous to put a user on notice that conditioned use of the service constituted assent to the terms and conditions).[5]

Plaintiff's efforts to disavow the existence of the contract between the parties are not persuasive. This is especially true in light of the following: (1) the offer of insurance warned consumers that it was subject to "[t]erms, conditions and exclusions[,]" instructed consumers to "[s]ee coverage details, and provided consumers with a hyperlink to view the terms of the 36-page Policy, ECF No. [84] ¶ 19, n.4; ECF No. [115] at 4, n.2; (2) following his purchase, Allianz emailed Plaintiff a copy of the 36-page Policy; (3) Plaintiff was afforded a 10-day grace period to cancel the Policy for "any reason . . . and receive a full refund[,]" ECF No. [84] at 30, 32; and (4) Plaintiff made a claim under the Policy for coverage, effectively conceding that a contract between the parties exists, *id.* ¶¶ 21-22. Accordingly, Plaintiff's unjust enrichment claim is also barred by the existence of an express contract governing the parties' relationship.

### b. Count IV – Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA")

In Count IV of the Amended Complaint, Plaintiff asserts a claim against Defendants for violation of FDUTPA, asserting that Defendants' "actions were unfair and deceptive as they misrepresented the real contents of their travel insurance policy." ECF No. [84] ¶ 101. A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice in the course of

---

[5] The Court is not convinced that the user interface here is the kind envisioned by the court in *Zamber v. Am. Airlines, Inc.*, No. 16-23901-CV, 2020 WL 1445479, at *3 (S.D. Fla. Feb. 11, 2020) as one that is "layered to the point of being excessively cumbersome or confusing." ECF No. [119-1] at 3. Indeed, "on the cusp of the third decade of the twenty-first century it can fairly be said that following a hyperlink is like turning a page in a printed document. Any reasonable viewer would realize that access to the text of the terms would be simple and immediate." *In re Daily Fantasy Sports Litig.*, No. MDL 16-02677-GAO, 2019 WL 6337762, at *10 (D. Mass. Nov. 27, 2019).

trade or commerce; (2) causation; and (3) actual damages. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (citing *Chicken Unlimited, Inc. v. Bockover*, 374 So. 2d 96, 97 (Fla. 2d DCA 1979)); *see also KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008).

As an initial matter, it must be noted that FDUTPA "does not apply" to "[a]ny person or activity regulated under the laws administered by" Florida's Office of Insurance Regulation or Florida's Department of Financial Services. Fla. Stat. § 501.212(4)(d). The Department of Financial Services and the Office of Insurance Regulation are tasked with enforcing the provisions of Florida's Insurance Code, Fla. Stat. §§ 624.05, 626.9561, and therefore, regulate "any person" who engages in "[u]nfair methods of competition and unfair or deceptive acts or practices" involving the business of insurance. Fla. Stat. § 626.9541(1); *see also* Fla. Stat. § 626.9511(1) (defining "person" to include "any entity involved in the business of insurance.").

Here, the Court agrees that Plaintiff's FDUTPA claim fails as a matter of law. First, based on Plaintiff's allegations in the Amended Complaint, Defendants are entities involved in the business of insurance, and are therefore regulated exclusively by the State of Florida. ECF No. [84] ¶¶ 2, 4; *id.* at 32, 34. Moreover, the purported "unfair and deceptive" offer and sale of insurance that Plaintiff complains of is precisely the type of activity that is regulated under Florida's Insurance Code. *See* Fla. Stat. § 626.9541(1)(a)-(b).[6]

---

[6] Plaintiff's only argument against dismissal is that the applicability of the FDUTPA exemption is "not an appropriate basis for a motion to dismiss." ECF No. [115] at 14. However, as Defendants argue "[c]ourts readily dismiss FDUTPA claims under Rule 12(b)(6) when it is facially apparent that the claims are precluded by § 501.212(4)." ECF No. [118] at 7. *See McIntyre v. Marriott Ownership Resorts, Inc.*, No. 13-80184-CIV, 2013 WL 12212640, at *3 (S.D. Fla. Dec. 10, 2013) ("By the [p]laintiff's own allegations, [defendant] is an entity involved in the business of insurance" and "therefore falls under the Florida Insurance Code's regulations against unfair or deceptive acts or practices."); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Vinardell Power Sys., Inc.*, No. 19-20093-CIV, 2019 WL 1440383, at *3 (S.D. Fla. Apr. 1, 2019) (dismissing FDUTPA claim on a motion to dismiss); *Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F. Supp. 2d 1318, 1326 (M.D. Fla. 2009) (same).

Even assuming arguendo that Plaintiff could bring a claim against Defendants under FDUTPA, the conduct alleged here does not rise to the level of an "unfair or deceptive practice." Specifically, Plaintiff alleges [w]hen [Defendants] made statements like: 'Yes, protect my trip' and 'Includes trip cancellation, trip interruption . . . and more,'" Defendants deceived consumers into believing that the product being sold was "very broad, no-fault travel protection when in reality they were selling a limited, very narrow, medical illness and catastrophic event insurance." ECF No. [84] ¶ 102. However, as explained above, Plaintiff has failed to plausibly allege that the offer of insurance "give[s] a reasonable consumer the net impression that Defendants' policy provides broad, no-fault protection and coverage[.]" ECF No. [115] at 12. Indeed, Plaintiff was warned that the Policy is subject to "[t]erms, conditions and exclusions[,]" had the opportunity to review the Policy before and after his purchase, and was able to cancel the Policy for "any reason" within 10 days following his purchase. ECF No. [84] ¶ 19, n.4; *id.* at 30, 32. Accordingly, for the reasons set forth herein, Plaintiff's FDUTPA claim is dismissed.

### c. Count V – Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO")

In Count V of the Amended Complaint, Plaintiff, on behalf of a nationwide class, alleges a RICO claim against "all Defendants"[7] pursuant to 18 U.S.C. § 1964(c). To state a claim under § 1964(c), a plaintiff must allege "three essential elements:" (1) "defendant committed a pattern of RICO predicate acts under 18 U.S.C. § 1962(c);" (2) "plaintiff suffered injury to business or property;" and (3) "defendant's racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations omitted) (quotation marks omitted). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

---

[7] In this context, "all Defendants" includes Defendants and American Airlines.

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c).

Notably, in the Dismissal Order, Judge O'Connor analyzed the identical RICO claim that is now before this Court and dismissed it with prejudice as to American Airlines. ECF No. [97] at 13-16 (finding Plaintiff failed to plausibly allege any actionable misrepresentation). The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also Fontainebleau Hotel Corp. v. Crossman*, 286 F.2d 926, 928 (5th Cir. 1961) ("The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." (citation omitted)).[8]

While courts have "the power to revisit prior decisions of its own or of a coordinate court in any circumstance" the rule of thumb is that "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice." *Christianson*, 486 U.S. at 818 (citation omitted); *see also Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.*, 210 F.3d 1348, 1350 (11th Cir. 2000) (recognizing narrow exceptions to the law of the case doctrine: new evidence brought to the court's attention, change in the law, and the earlier decision was a "clear error" that "would work a manifest injustice."); *Cox Enterprises, Inc. v. News-J. Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015) (the Eleventh Circuit has "emphasized that the 'clear error' exception must be rarely invoked. . . . [I]n a close case, a court must defer to the legal conclusion of a coordinate court in the same case; only when the legal

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

error is beyond the scope of reasonable debate should the court disregard the prior ruling. Needless to say, this is a high bar." (quotation marks omitted) (footnotes omitted)).

Here, because the RICO claim against Defendants arises from the same allegations of fact and purported violations of law asserted against American Airlines, ECF No. [84] ¶¶ 106-118, the Court finds that Judge O'Connor's analysis with respect to Count V is determinative of the RICO claim as it stands before this Court. For the reasons that follow, it can hardly be said that Judge O'Connor's analysis was "so clearly erroneous that the [the Court] cannot construe it as a reasoned outcome." *Cox Enterprises, Inc.*, 794 F.3d at 1272.

### 1. Pattern of racketeering: mail and wire fraud

First, the Court agrees that the RICO claim fails to sufficiently plead that Defendants engaged in a "pattern of racketeering activity." Where, as here, the predicate pattern racketeering activity is based on allegations of mail and wire fraud,[9] a claimant must allege the existence of a scheme to defraud, and that the defendants "intentionally participate[d] in a scheme to defraud another of money or property and use[d] the mails or wires in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010); *see also Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1224-25 (S.D. Fla. 2015). "In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *Am. Dental Ass'n*, 605 F.3d at 1290-91 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).

"[I]n the Eleventh Circuit '[a] scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts reasonably calculated to

---

[9] According to the Amended Complaint, Plaintiff's RICO claim is premised on a pattern of racketeering activity that consists of the predicate acts of mail fraud, wire fraud, and money laundering. ECF No. [84] ¶ 111. However, based on Plaintiff's submissions and position taken at oral argument, it appears that Plaintiff has abandoned any assertion of money laundering as a predicate act. *See* ECF No. [97] at 14-15 (finding Plaintiff's "conclusory allegation is not enough to plead a money laundering claim").

deceive persons of ordinary prudence.'" *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1372 (M.D. Fla. 2005) (quoting *United States v. Hasson*, 333 F.3d 1264, 1270-71 (11th Cir. 2003) and citing *Neder v. United States*, 527 U.S. 1, 21, 25, (1999)). A plaintiff must establish that the defendant "had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by its misrepresentations" which amounts to "the same showing of reasonable reliance that is required for establishing common law fraud." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1503 (11th Cir. 1991); *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998) (stating that a plaintiff must "prove that a reasonable person would have relied on the misrepresentations")).

In the Amended Complaint, Plaintiff alleges that "[w]hen the enterprise makes (or permits to make) statements like: 'Yes, protect my trip' and 'Includes trip cancellation, trip interruption, . . . and more," the enterprise "portray[s] to consumers the net impression that the product being sold is broad, no fault, travel protection, when in reality the product is a much more limited, narrow, medical illness and catastrophic event insurance only." ECF No. [84] ¶ 116. However, as Judge O'Connor correctly determined, Plaintiff "cannot plausibly allege a material misrepresentation" amounting to mail or wire fraud because:

> (1) Allianz's offer warned Arencibia that "[t]erms, conditions, and exclusions apply," Declaration of Coverage at 2, Am. Compl. Ex. C; (2) Allianz provided him with a hyperlink to view those terms; (3) Allianz provided him at the time of purchase with direct access to a detailed 36-page policy that "accurately reflect[ed] the nature, essence, and substance of what it covers"; (4) Allianz emailed him another link to those terms; and (5) the Allianz policy afforded him 10 days after receiving it to review and cancel without charge for any reason. Am. Compl. ¶¶ 19 n.4, 38-39, 44; *id.* at Exs. C-D.

ECF No. [97] at 14-15.

In his Response, Plaintiff maintains that Judge O'Connor erred in finding that the Amended Complaint fails to sufficiently plead predicate acts of mail and wire fraud. In so arguing, Plaintiff seemingly urges the Court to ignore the express language of the Policy and the conspicuous hyperlinked disclaimer found below the offer of insurance. ECF No. [115] at 11; *see also* ECF No. [84] ¶ 19, n.4. The Court is not persuaded that "the basic disclaimer clearly does not put anyone on notice of what the terms of the insurance policy are." ECF No. [115] at 17. Accordingly, because Plaintiff fails to plead any actionable misrepresentation by Defendants, the RICO claim warrants dismissal on this basis alone.

### 2. Injury in fact

Assuming that Plaintiff had sufficiently pled a violation of Section 1962(c), Judge O'Connor also determined that Plaintiff failed to allege a cognizable RICO injury. The Court agrees. Based on the allegations in the Amended Complaint, along with the plain language of the Policy, Plaintiff "'received the coverage and services for which he contracted,' and thus cannot plausibly claim that he did not 'receive[] the benefit of his bargain,' meaning that he 'suffered no injury.'" ECF No [97] at 16 (citing *Zamber v. Am. Airlines, Inc.*, No. 4:20-cv-00114, 2020 WL 3163037, at *7 (N.D. Tex. June 11, 2020)). Interestingly, despite the purported misrepresentations and corresponding damages complained of, Plaintiff alleges that the Policy is in fact cheaper than purchasing a refundable flight ticket that American Airlines offers. *See* ECF No. [84] ¶ 51 ("For [some] consumers, the 'insurance' is their only option to protect purchased flights when they are uncertain about travel . . . . For example, a coach non-refundable ticket in AA can cost $378, while a coach refundable ticket can be four time as much or $1,372.") (footnote omitted). Accordingly, Plaintiff's RICO claim fails on this basis as well.[10]

---

[10] Because the Court concludes that Plaintiff has failed to state a claim under RICO, the Court does not address Defendants' alternative argument that the claim is barred by the McCarran-Ferguson Act.

### d.   Count I – Declaratory Action

Lastly, Defendants argue that because Plaintiff's common law and statutory claims are due to be dismissed, Count I of the Amended Complaint for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, must also be dismissed.

Declaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own. *See Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-81004-CIV, 2010 WL 376309, at *8 (S.D. Fla. Jan. 26, 2010) ("declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." (quoting *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir.1963)); *see also Jolibois v. Fla. Int'l Univ. Bd. of Trustees*, 654 F. App'x 461, 466 (11th Cir. 2016) ("The Declaratory Judgment Act is procedural in operation and does not confer independent jurisdiction upon this Court.").

Here, since Plaintiff's substantive claims have all been dismissed, Plaintiff's claim for declaratory relief must also be dismissed. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1199 (S.D. Fla. 2017) (dismissing claim for declaratory relief where all substantive claims have been dismissed) (citing *Eveillard v. Nationstar Mortg. LLC*, No. 14-cv-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015)); *see also Robb v. Rahi Real Estate Holdings LLC*, No. 10-81474-CIV, 2011 WL 2149941, at *8 (S.D. Fla. May 23, 2011) (dismissing claim for declaratory judgment because "[t]he only outstanding claim that has not been dismissed with prejudice, declaratory judgment [], cannot stand on its own").

### V.   LEAVE TO AMEND

Plaintiff, in the alternative, seeks leave to amend the Amended Complaint. ECF No. [115] at 23. A district court need not allow an amendment if there has been (1) "undue delay, bad faith, dilatory motive or repeated failures to cure deficiencies" by prior amendments; (2) "where

Case No. 20-cv-24694-BLOOM/Otazo-Reyes

allowing the amendment would cause undue prejudice to the opposing party[;]" or (3) "where the amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Plaintiff had the opportunity to amend his original Complaint after previewing the motions to dismiss filed by Defendants and American Airlines. ECF Nos. [26], [29], [31], [32], [41], and [45]. Despite his attempts to cure the pleading deficiencies, the Amended Complaint still fails to state a plausible claim for relief. Even if the Court were inclined to give Plaintiff a third attempt, the amendment would be futile as Plaintiff's own allegations, taken as true, negate Defendants' purported misrepresentation of the travel insurance offer and the terms of the Policy. Accordingly, Counts I, III, IV, and V of the Amended Complaint are dismissed with prejudice.

## VI.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [107]**, is **GRANTED**.

2. The Amended Complaint, **ECF No. [84]**, is **DISMISSED WITH PREJUDICE**.

3. To the extent not otherwise disposed of, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 7, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record